SaraEllen Hutchison (AK Bar No. 0511115)
LAW OFFICE OF SARAELLEN HUTCHISON, PLLC
2367 Tacoma Avenue South
Tacoma, WA 98402
Telephone: 206-529-5195
Facsimile: 253-302-8486
Email: saraellen@saraellenhutchison.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RUSSELL WYATT,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK N.A. AND AMERICAN EXPRESS COMPANY,<br><br>Defendants. | Case No.: 3:23-cv-00139-JMK<br><br>**COMPLAINT WITH JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Wells Fargo Bank N.A., and American Express Company's (collectively "Defendants") violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## JURISDICTION

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

3. Jurisdiction and Venue in the United States District Court, District of Alaska, are appropriate where this dispute involves federal law, where all acts at issue and

described herein occurred in this district, where the injury to Plaintiff occurred in this district, and where Plaintiff is a resident of this district. 15 U.S.C. §1681; 28 U.S.C. §1391(b); 28 U.S.C. §1331.

## PARTIES

4. Plaintiff, Russell Wyatt (hereinafter "Plaintiff"), is a natural person who resides in the city of Anchorage, State of Alaska, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant, Wells Fargo Bank, N.A., (hereinafter "Defendant Wells Fargo") is a national bank that conducts business in the State of Alaska and has a principal place of business located at 420 Montgomery Street, San Francisco, CA 94104. Defendant Wells Fargo engages in the practice of furnishing consumer information to consumer reporting agencies and is therefore a "furnisher of information" as contemplated by 15 U.S.C. § 1681s-2(a) & (b). Defendant Wells Fargo is a "person" as defined in 15 U.S.C. § 1681a(b).

6. Defendant American Express Company (hereinafter "Defendant AMEX") is a financial institution that conducts business in the State of Alaska and has a principal place of business located at 301 North Walnut Street, Wilmington, DE 19801. Defendant AMEX engages in the practice of furnishing consumer information to consumer reporting agencies and is therefore a "furnisher of information" as

COMPLAINT WITH JURY TRIAL DEMANDED
CASE NUMBER: 3:23-CV-00139-JMK

PAGE 2

Case 3:23-cv-00139-JMK   Document 1   Filed 06/28/23   Page 2 of 14

contemplated by 15 U.S.C. § 1681s-2(a) & (b). Defendant AMEX is a "person" as defined in 15 U.S.C. § 1681a(b).

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

7. Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions. Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

8. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

9. The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

10. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied

LAW OFFICE OF SARAELLEN HUTCHISON, PLLC
2367 TACOMA AVENUE SOUTH | TACOMA, WA 98402
PH (206) 529-5195 | FAX (253) 302-8486
saraellen@saraellenhutchison.com

because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

11. Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

12. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

13. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

14. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

15. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. (Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf).

## **FACTUAL ALLEGATIONS**

16. The Alaska Department of Revenue, Permanent Fund Dividend (PFD) Division is responsible for determining applicant eligibility for the distribution of an annual dividend that is paid to Alaska residents from investment earnings of mineral royalties. The annual payment allows for Alaskans to share in a portion of the State minerals revenue in the form of a dividend to benefit current and future generations.

17. On the first of each calendar year, the online PFD application becomes available to Alaska residents. The application season lasts from January 1 through March 31.

18. Included in each application, Alaska residents provide their personal identifying information (name, date of birth, address, and social security number) and bank account information.

19. In 2019, the online PFD application website experienced a glitch or hack resulting in a large-scale data breach.[1]

20. Specifically, when an Alaska resident hit "enter" to submit their online application, the page reloaded and automatically populated the application form with another person's identifying/banking information.

21. On January 1, 2019, Plaintiff applied for the annual PFD payment.

22. When Plaintiff clicked "enter" on the PFD website, the page reloaded and automatically populated the application with the personal information of another Alaska resident.

23. Plaintiff called the man whose information automatically populated and informed him of the data breach.

24. Similarly, Plaintiff received phone calls from three different Alaska residents informing Plaintiff that his application, including his personal identifying/banking information, was appearing on their computer screens.

---

[1] https://www.seattletimes.com/seattle-news/northwest/security-concerns-prompt-closing-of-online-pfd-applications/ (Accessed June 28, 2023).

25. Due to the breach of his personal information, Plaintiff was the victim of identity theft and noticed multiple accounts appearing on his credit report which Plaintiff did not open.

26. The fraudulent accounts, with creditors other than Defendants, started appearing on Plaintiff's credit report shortly after January 1, 2019, breach of his information.

27. On May 8, 2020, Plaintiff filed a theft of identity police report with the Anchorage Police Department, report #200506563.

## **FACTUAL ALLEGATIONS SPECIFIC TO DEFENDANT WELLS FARGO**

28. On July 9, 2020, the thief who stole Plaintiff's identity used Plaintiff's personal information without his knowledge or consent to open a credit card account with Defendant Wells Fargo, account number XXXXXXXXXXXXXXXX.

29. Plaintiff was unaware of the fraudulent Wells Fargo account until September 2, 2022, when Plaintiff attempted to secure a car loan and was denied due to the amount owed on the fraudulent account with Defendant Wells Fargo.

30. After getting denied the car loan on September 2, 2022, Plaintiff obtained a copy of his credit reports and saw the account with Defendant Wells Fargo was charged off with an outstanding balance.

31. Plaintiff contacted Defendant Wells Fargo's fraud department directly and submitted a fraud claim.

LAW OFFICE OF SARAELLEN HUTCHISON, PLLC
2367 TACOMA AVENUE SOUTH | TACOMA, WA 98402
PH (206) 529-5195 | FAX (253) 302-8486
saraellen@saraellenhutchison.com

LAW OFFICE OF SARAELLEN HUTCHISON, PLLC
2367 TACOMA AVENUE SOUTH | TACOMA, WA 98402
PH (206) 529-5195 | FAX (253) 302-8486
saraellen@saraellenhutchison.com

32. In his fraud claim, Plaintiff explained he was the victim of identity theft and that he filed a police report with the Anchorage Police Department. Plaintiff attached the police report, multiple forms of identification, proof of his home address, and other information that demonstrated he did not open the credit card account with Defendant Wells Fargo, account number XXXXXXXXXXXXXXXX.

33. Despite the plethora of evidence attached to Plaintiff's claim, Defendant Wells Fargo repeatedly denied Plaintiff's fraud claim.

34. Finally in September 2022, after nearly two years of asking Defendant Wells Fargo to admit the account was fraud and stop reporting it to the credit reporting agencies, Plaintiff sent the national credit reporting agencies (CRAs), Equifax, Trans Union and Experian, a letter with the police report attached disputing the inaccurate and fraudulent information on his consumer report pursuant to 15 U.S.C. 1681i.

35. Thereafter the CRAs forwarded Plaintiff's dispute information to Defendant Wells Fargo for investigation as required by 15 U.S.C. § 1681i(a)(2).

36. Defendant Wells Fargo failed to conduct a reasonable investigation and verified the fraudulent account XXXXXXXXXXXXXXXX as belonging to Plaintiff in violation of 15 U.S.C. 1681s-2(b).

37. As a result of Defendant Wells Fargo's inaccurate and malicious reporting to the credit reporting agencies that Plaintiff's fraudulent account was charged off in the amount of $6,271 and that he refused to make payments for several months,

COMPLAINT WITH JURY TRIAL DEMANDED
CASE NUMBER: 3:23-CV-00139-JMK

Plaintiff has suffered a reduced credit score and profile, emotional distress, embarrassment, frustration, loss of time in multiple and repeated communications disputing the Wells Fargo account, a distraction from work, loss of sleep, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

38. Plaintiff is entitled to attorney's fees and costs from Defendant Wells Fargo pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

39. Defendant Well Fargo's false and negative credit reporting has caused Plaintiff's credit score to go down considerably.

40. Plaintiff takes great care in working and guarding his credit report/score and is now embarrassed and humiliated that his score is not perfect as it should be without Defendant's adverse account.

## FACTUAL ALLEGATIONS SPECIFIC TO DEFENDANT AMEX

41. On September 1, 2022, the thief who stole Plaintiff's identity used Plaintiff's personal information without his knowledge or consent to open a credit card account with Defendant AMEX, account number XXXXXXXXXXXX1583.

42. Shortly thereafter, Plaintiff obtained a copy of his credit reports and discovered the account with Defendant AMEX fraudulently opened in his name with a balance of $7,689.

43. Plaintiff disputed directly with Defendant AMEX both in written and telephonic communications explaining and pleading with AMEX that the account was not opened by him and was the result of theft of identity.

44. Defendant AMEX refused to believe Plaintiff and failed to update its reporting to reflect the account as disputed.

45. On January 18, 2023, Plaintiff sent the national credit reporting agency Equifax Information Solutions LLC (Equifax) a letter with the police report attached disputing the inaccurate and fraudulent information on his consumer report pursuant to 15 U.S.C. 1681i.

46. Thereafter Equifax forwarded Plaintiff's dispute information to Defendant AMEX for investigation as required by 15 U.S.C. § 1681i(a)(2).

47. Defendant AMEX failed to conduct a reasonable investigation and verified the fraudulent account XXXXXXXXXXXX1583 as belonging to Plaintiff in violation of 15 U.S.C. 1681s-2(b).

48. On March 6, 2023, Plaintiff mailed a letter to Equifax and again disputed the fraudulent Defendant account (account #XXXXXXXXXXXX1583) pursuant to 15 U.S.C. 1681i.

49. Thereafter Equifax forwarded Plaintiff's dispute information to Defendant AMEX for investigation as required by 15 U.S.C. § 1681i(a)(2).

50. Once again, Defendant AMEX verified to Equifax that the account number XXXXXXXXXXXX1583 belonged to Plaintiff and was accurately reporting on his credit report, in violation of 15 U.S.C. § 1681s-2(b).

51. Defendant AMEX violated 15 U.S.C. §1681s-2(b) when it received the notification of disputes from Equifax concerning Plaintiff's disputed account and failed to conduct a reasonable investigation and failed to delete the fraudulently opened account that did not belong to Plaintiff.

52. As a result of Defendant AMEX's inaccurate and malicious reporting to the credit reporting agencies that Plaintiff's fraudulent account was closed with a balance of $7,689 and that he refused to make payments for several months, Plaintiff has suffered a reduced credit score and profile, emotional distress, embarrassment, frustration, loss of time and money in conducting his dispute communications, a distraction from work, loss of sleep, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

53. Plaintiff is entitled to attorney's fees and costs from Defendant AMEX pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

54. Defendant AMEX's false and negative credit reporting has caused Plaintiff's credit score to go down considerably.

55. Plaintiff takes great care in working and guarding his credit report/score and is now embarrassed and humiliated that his score is not perfect as it should be without Defendant AMEX's adverse account.

## TRIAL BY JURY

56. Plaintiff is entitled to, and hereby demands, a trial by jury. US Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION
## COUNT I.
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT –
## 15 U.S.C. § 1681 *et seq.*

57. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58. Defendants violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline, or, in the alternative, failed to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

59. As a result of Defendants' violations of the FCRA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to his credit rating,

emotional distress, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

60. Defendants' conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

61. Alternatively, Defendants' violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

62. Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- actual, statutory, and punitive damages, and costs and attorneys' fees for Defendant's violations of the FCRA, pursuant to 15 U.S.C §§ 1681n and 1681o, in an amount to be determined at trial; and

- for such other and further relief as the Court may deem just and proper.

Dated this 28th day of June, 2023 at Tacoma, Washington.

Respectfully submitted,

COMPLAINT WITH JURY TRIAL DEMANDED
CASE NUMBER: 3:23-CV-00139-JMK

S//SaraEllen Hutchison
SARAELLEN HUTCHISON (AK Bar No. 0511115)
Law Office of SaraEllen Hutchison, PLLC
2367 Tacoma Avenue South
Tacoma, WA 98402
Telephone: (206) 529-5195
Facsimile: (253) 302-8486
E-mail: saraellen@saraellenhutchison.com